Filed 7/10/26  P. v. Gloede CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN CHRISTIAN GLOEDE,<br><br>        Defendant and Appellant. | A173490<br><br>(Alameda County<br>Super. Ct. No. 20-CR-015734) |

Defendant Jonathan Christian Gloede appeals from a jury verdict convicting him, in relevant part, of forcible rape, sexual penetration by foreign object, forcible oral copulation, and attempted sodomy, together with special allegations of simple and aggravated kidnapping as to those counts.

Gloede and the Attorney General agree that the trial court erred in imposing an indeterminate sentence on the attempted sodomy conviction and failed to properly calculate Gloede's determinate sentence.  Gloede also contends insufficient evidence supports the kidnapping findings.  We remand for resentencing, but otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Gloede and the victim were engaged after dating for approximately seven months.  The victim lived with her four children, and Gloede would spend the night at their apartment a few times per week.

1

In November 2020, the victim went to pick up her children from their father's home after she and Gloede had dinner with friends. The victim requested Gloede accompany her, but he was uninterested in doing so and stayed at the victim's apartment. During the drive, the victim and Gloede argued by telephone about the cleanliness of her apartment. When the victim arrived home with her children, Gloede had left to see a friend. The victim called off their engagement and told Gloede not to return to her apartment.

The following morning, the victim awoke to over 20 text messages from Gloede. He asked her to pick him up from near the Pleasanton BART station so he could get his belongings, and she agreed. When Gloede got into her vehicle, he asked her "what the fuck [she] was doing," became angry when the victim continued to state the relationship was over, and tore the rear-view mirror from the windshield. Gloede then escalated to punching the dashboard and radio area, and stabbing the front air bag, door, radio, and touch screen with a knife. When the victim stopped the vehicle on a side street, Gloede hit her in the face and left eye and held the knife to her throat. When he noticed she was not wearing her engagement ring, he attempted to bite off her fingers.

The victim sought to calm down Gloede by telling him it was "okay" and the damage to the car could be fixed. However, Gloede instructed the victim to drive back to her apartment while threatening her with the knife. Upon arriving, Gloede stated he was "definitely going to prison" and demanded she go upstairs to her apartment with him. The victim did not feel she had a choice. Gloede held the knife to her back while they walked, and he physically assaulted her again in the elevator. One of her children opened

the door for the victim and Gloede, and the victim instructed the child to return to bed.

Gloede forced the victim into her bedroom, and she believed she was "probably going to die." The victim instructed another of her children, who was sleeping in her room, to climb into bed in another room with one of his siblings. After the child left, Gloede closed and locked the bedroom door, and he informed the victim he had committed multiple felonies and was going to rape and kill her. When the victim was slow to undress, Gloede ripped off her shirt and removed the rest of her clothing.

Gloede proceeded to sexually assault the victim by inserting his fingers into her vagina and anus, and his penis into her vagina. When he attempted to sodomize the victim, she repeatedly told Gloede no and tried to push him away. He then grabbed the victim's hair and forced her to perform oral sex on him. The victim stated she did not scream for help because she was concerned Gloede would hurt her children.

After being trapped in her locked bedroom with Gloede for approximately three hours, the victim managed to retrieve her phone and texted her children to get dressed and go sit in the car. Gloede eventually allowed the victim to leave the bedroom, and she drove to Gloede's mother's house and informed her what had occurred.

Approximately four days after the attack, the victim informed the police about the sexual assault. The victim was treated at the hospital, where she informed a physician's assistant about the physical and sexual assault.

The Alameda County District Attorney charged Gloede by information with forcible rape (Pen. Code, § 261, subd. (a)(2); count 1; all further statutory references are to this code), sexual penetration by foreign object (§ 289,

3

subd. (a)(1)(A); count 2), forcible oral copulation (§ 287, subd. (c)(2)(A); count 3), attempted sodomy by use of force (§§ 286, subd. (c)(2)(A), 664; count 4), kidnapping to commit a sex crime (§ 209, subd. (b)(1); count 5), corporal injury to relationship partner (§ 273.5, subd. (a); count 6), false imprisonment by violence (§ 236; count 7), felony vandalism (§ 594, subd. (a); count 8), and dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 9). As relevant to this appeal, the information also alleged that Gloede had engaged in simple and aggravated kidnapping of the victim in connection with the sex offenses pled in counts 1 through 4 (§ 667.61, subds. (d)(2), (e)(1)). The court dismissed counts 5 and 9, and Gloede pled guilty to counts 6 and 8.

At trial, Gloede admitted hitting the victim but denied any sexual assault. Gloede stated he and the victim had communication issues, and the evening before the assault they had a disagreement about the cleanliness of her apartment. Gloede stated he went to a friend's house and then called the victim the following morning to get his belongings because he decided to end their relationship. Gloede became upset when the victim accused him of cheating, then hit her and the vehicle when he saw she was not wearing her engagement ring. Gloede denied threatening the victim with a knife, assaulting her in the elevator, boasting about committing felonies, threatening rape, or sexually assaulting the victim.

Gloede was found guilty by a jury on the remaining counts, along with the simple and aggravated kidnapping special circumstances on counts 1 through 4. The court sentenced Gloede to an indeterminate term of 25 years to life in prison on counts 1 through 4, to be served consecutive to a determinate term of two years four months in prison on counts 6 through 8. Gloede timely appealed.

DISCUSSION

On appeal, Gloede asserts the kidnapping special circumstance is not supported by substantial evidence. He further asserts the trial court imposed an improper sentence for the attempted sodomy conviction.

## I. Standard of Review

In evaluating claims of insufficient evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) A judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We may not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses. (*Ochoa*, at p. 1206.)

## II. The Kidnapping Special Circumstance

Gloede does not dispute on appeal the evidence that he forced the victim from her vehicle to her apartment, led her to her bedroom, closed and locked the door, and sexually assaulted her. Instead, Gloede contends that the evidence is insufficient to establish that his movement of the victim increased or substantially increased the risk of harm to her sufficient to support either the aggravated or simple kidnapping special circumstance findings. He is incorrect.

### A. Relevant Law

The "One Strike" law (§ 667.61) requires an increased term for convictions of certain sexual offenses if the defendant kidnapped the victim.

5

In particular, if the defendant committed a simple kidnapping of the victim under section 207, subdivision (a), the required term for the sexual offense is 15 years to life (§ 667.61, subds. (b), (e)(1)), whereas if the movement also substantially increased the risk of harm to the victim, the required term is 25 years to life (§ 667.61, subds. (a), (d)(2)).

Under either simple or aggravated kidnapping, the asportation element "requires that the movement be ' "more than that which is merely incidental to the commission or attempted commission of [the associated crime]." ' " (*People v. Waqa* (2023) 92 Cal.App.5th 565, 578 (*Waqa*).) Simple kidnapping "requires that the defendant moved the victim 'a " 'substantial distance,' " ' " but no minimum distance is required. (*Id.* at pp. 577–578.) The aggravated kidnapping circumstance, however, also requires that the movement *substantially* increased the risk of harm to the victim beyond that inherent in the underlying offense. (*Id.* at p. 578.) " '[T]he increased risk may be of either physical or psychological harm.' " (*Ibid.*) Accordingly, aggravated kidnapping requires a two-part showing: (1) the movement was substantial in character, and not merely incidental to the commission of the sex crime; and (2) the movement substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense. (*Id.* at p. 579.)

### B. Analysis

In finding true the simple and aggravated kidnapping special circumstances, the jury was required to find that the victim's movement was not merely incidental to the sexual assault but that "the movement . . . increase[d] 'the risk of harm to the victim over and above that necessarily present in the [assault].' " (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168 (*Shadden*); § 667.61, subd. (d)(2) ["The defendant kidnapped the victim of the

6

present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying . . . ."].)  By finding the aggravated kidnapping special circumstance allegation to be true, the jury necessarily found that Gloede's movement of the victim substantially increased the risk of harm to her beyond that necessarily inherent in the sexual assault offenses. (§ 667.61, subds. (a), (d)(2).)

Substantial evidence supports those findings.  Courts have long recognized that " '[w]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short.' " (*People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1048.)  Thus, "[w]here movement changes the victim's environment, it does not have to be great in distance to be substantial." (*Shadden*, *supra*, 93 Cal.App.4th at p. 169.)

This type of movement is precisely what occurred here.  Gloede forced the victim from her vehicle on a public street into her apartment (where there were no other adults) and then into a locked bedroom, where he sexually assaulted her.  By moving the victim from a public location into a secluded and confined setting, Gloede materially reduced the likelihood of detection or interruption and increased the risk of harm beyond that inherent in the sexual assault itself.  (See *Shadden*, *supra*, 93 Cal.App.4th at p. 170 ["common critical factor was that the defendant either secluded or confined the victim."].)

Gloede argues the movement reduced the risk of harm because "[t]he safest place to commit a sexual offense would have been in [the victim's] car" given the presence of others in the apartment.  Gloede claims the movement at issue here is "the opposite" of what constitutes kidnapping.  That

7

argument ignores the significance of the movement from a public setting to a secluded one.  The jury could reasonably infer that, although Gloede was willing to threaten and physically assault the victim in public, he chose to delay the sexual assault until he had moved her into a location where he could commit it without detection or interruption.

The jury could also rely on factors beyond decreased likelihood of detection.  In determining whether movement increased the risk of harm, jurors may consider other factors, such as " ' " 'the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.' " ' " (*Waqa, supra*, 92 Cal.App.5th at p. 580.)  By forcing the victim into her bedroom and closing and locking the door, Gloede substantially increased his opportunity to commit additional crimes against the victim and maintain his control over the situation.

The authorities on which Gloede relies do not compel a different result.  In *People v. Perkins* (2016) 5 Cal.App.5th 454, the victim was moved from the bathroom to a bedroom within the same apartment and all doors remained open.  (*Id*. at pp. 460, 470.)  In *Waqa*, the victim was moved from a small stall to a large stall within the same bathroom.  (*Waqa, supra.* 92 Cal.App.5th at p. 579.)  Neither of these cases involved movement from a public street into a private residence and then into a locked bedroom.  The jury could reasonably conclude that the movement here created a substantially greater increase in risk than the movements at issue in *Perkins* or *Waqa*.

The presence of the victim's four minor children elsewhere in the apartment does not negate the increased risk created by moving her into a private residence and then behind a locked bedroom door.  And we readily dispense with the argument that the victim's request that her eight-year-old child leave the bedroom before Gloede locked the door alters this analysis.

8

Nothing indicated Gloede was less likely to engage in criminal activity due to the presence of the child, and it is absurd to expect a young child to mitigate harm to their mother.

Finally, substantial evidence supports a finding that the movement increased the risk of psychological harm. Gloede threatened the victim with a knife, damaged her vehicle with it, and then forced her at knifepoint from the vehicle to her apartment where he sexually assaulted her while her children were present in the home. The victim testified she feared Gloede would harm her children if she attempted to escape or seek help. The jury could reasonably conclude that forcing the victim into her home and subjecting her to the assault in an apartment that also contained her children substantially increased the risk of psychological trauma. (See *People v. Nguyen* (2000) 22 Cal.4th 872, 885–886 [the increased risk of harm element of crime of aggravated kidnapping includes both physical and psychological harm].)

In sum, substantial evidence supports the jury's finding that Gloede's movement of the victim from her vehicle on a public street to a locked bedroom in her apartment substantially increased the risk of harm beyond that inherent in the sexual assault offenses.

## III. Remand for Resentencing

Gloede argues he is entitled to resentencing because attempted sodomy is not subject to the One Strike law pursuant to section 667.61, subdivision (c). The Attorney General agrees and supports resentencing on this ground. The Attorney General also asserts the trial court made a second sentencing error. Specifically, the court erroneously imposed a determinate sentence solely based on subordinate terms without calculating and imposing a principal determinate term.

## A. Relevant Background

Gloede was sentenced to 25 years to life in prison on counts 1 to 4, which was comprised of (1) imposition of the 25-year-to-life sentence on count 1, (2) concurrent 25-year-to-life terms on counts 2 and 3, and (3) a 25-year-to-life sentence on count 4, which the court stayed pursuant to section 654.

The court also imposed a determinate term of two years four months on counts 6 to 8, which would run consecutive to the indeterminate term. The court calculated the determinate term by imposing consecutive sentences of one-third of the middle term—one year—on count 6, one-third of the middle term—eight months—on count 7, and one-third of the middle term—eight months—on count 8.

## B. Analysis

Both parties acknowledge the One Strike law is inapplicable to Gloede's conviction for attempted sodomy (count 4) and agree that the trial court erred in calculating the determinate term on counts 6 through 8. However, the parties disagree as to whether Gloede's determinate term can exceed his original sentence of two years and four months.

As an initial matter, we agree with the parties regarding the trial court's sentencing errors. Attempted sodomy does not fall within the scope of section 667.6 or the One Strike law, and thus must be sentenced via a determinate term under section 1170.1. (*People v. Rodriguez* (2012) 207 Cal.App.4th 204, 217.) Moreover, as explained in *Rodriguez,* sentencing offenses subject to determinate terms involves a three-step process: " 'First, the trial court is required to select a base term—either the statutory low, middle or upper term—for each of the crimes. [Citations.] Second, if the court determines that a consecutive sentence is merited, it must designate the crime with the "greatest" selected base term as the principal term and the

other crimes as subordinate terms.  [Citation.]  Third, the court sentences the defendant to the full base term it selected for the principal term crime and one-third of the middle term for any crimes for which the sentence is ordered to run consecutively.  [Citations.]  A subordinate term is one-third of the middle term even if the trial court had initially selected the lower or upper term as the base term.' "  (*Id*. at pp. 211–212.)  The court did not follow this procedure when sentencing Gloede on counts 6 through 8.  Accordingly, resentencing is required.

However, the parties disagree as to whether, on remand, the trial court can impose a determinate term greater than the term originally set. Generally, " '[w]hen a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing.' "  (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 431, italics omitted.)  This rule does not apply, however, when a trial court imposes an unauthorized sentence.  (*Ibid*.)  In such cases, courts may impose the proper judgment on remand " 'even though it is more severe than the original unauthorized pronouncement.' "  (*Id*. at p. 432, italics omitted; see also *People v. Burhop* (2021) 65 Cal.App.5th 808, 814 ["[A]n unauthorized sentence renders the unlawful part of a judgment of conviction and sentence void and correctable at any time."]; *People v. Govan* (2023) 91 Cal.App.5th 1015, 1036, fn. 21 ["We must correct an unauthorized sentence even where the corrected sentence results in a longer term."].)

Here, the trial court's sentence on count 4 of an indeterminate term of 25 years to life was unauthorized and must be corrected.  Likewise, the court's failure to designate a principal term among counts 6 through 8 amounted to an unauthorized sentence.  (See *People v. Neely* (2009) 176 Cal.App.4th 787, 797–798 [court erroneously applied principal

11

term/subordinate term methodology set forth in § 1170.1 to all the offenses when it imposed one-third of the middle term sentences for the determinative term offenses].) Accordingly, the trial court is not constrained by the length of the original determinative sentence for purposes of resentencing.

## DISPOSITION

This matter is remanded for resentencing in accordance with this opinion. Following resentencing, the trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


PETROU, J.

WE CONCUR:


TUCHER, P. J.

RODRÍGUEZ, J.


A173490 / *People v. Gloede*

12